UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JERMAINE MARIE NARCISSE          CIVIL ACTION NO. 6:16-cv-00727

VERSUS                           JUDGE DOHERTY

U.S. COMMISSIONER,               MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Jermaine Marie Narcisse, fully exhausted her administrative

remedies before filing this action in federal court. The claimant filed an application

for disability insurance benefits ("DIB"), alleging disability beginning on November

1, 2013.[1] Her application was denied.[2] The claimant requested a hearing,[3] which was

held on January 7, 2016 before Administrative Law Judge Matthew Allen.[4] The ALJ

---

[1]     Rec. Doc. 8-1 at 122.

[2]     Rec. Doc. 8-1 at 48.

[3]     Rec. Doc. 8-1 at 63.

[4]     Rec. Doc. 8-1 at 30-47.

issued a decision on January 27, 2016,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act from November 1, 2013 through the date of the decision. The claimant asked for review of the decision, but the Appeals Council concluded that there was no basis for review.[6] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant, who is representing herself in this appeal, was born on March 10, 1971.[7] At the time of the ALJ's decision, she was forty-four years old. She graduated from high school and attended college for one year.[8] She has relevant work experience as a deli worker, cashier, and supervisor for the company that provides food services for the University of Louisiana in Lafayette, Louisiana;[9] as a delivery

---

[5]     Rec. Doc. 8-1 at 16-23.

[6]     Rec. Doc. 8-1 at 4.

[7]     Rec. Doc. 8-1 at 33, 122.

[8]     Rec. Doc. 8-1 at 33.

[9]     Rec. Doc. 8-1 at 34, 155, 174.

driver;[10] as a caretaker in a home health services company;[11] and as a clerical assistant and direct care worker at a mental health program.[12]  At the time she applied for benefits and also at the time of the hearing, she was working part-time performing housekeeping or janitorial services.[13]  She alleged that she has been disabled since November 1, 2013[14] due to a collapsed right lung, fluid build up in her lungs on the right side, depression, anxiety, shortness of breath, fatigue, and weakness.[15]

On March 4, 2013, the claimant was seen at the SWLA Center for Health Services in Lake Charles, Louisiana.[16]  She complained of shortness of breath and cramping during her menstrual cycle.  Wheezes were detected on both sides of her lungs.  Her chest wall was tender, and her thoracic muscles were tender on the right side.  She displayed a normal mood and affect.  She was prescribed an Albuterol inhaler for shortness of breath and wheezing, Loratadine for her sinuses, and

---

[10]     Rec. Doc. 8-1 at 36, 174.

[11]     Rec. Doc. 8-1 at 35-36, 155, 174.

[12]     Rec. Doc. 8-1 at 35, 155, 174.

[13]     Rec. Doc. 8-1 at 34, 153; Rec. Doc. 9 at 2.

[14]     Rec. Doc. 8-1 at 49.

[15]     Rec. Doc. 8-1 at 49, 153.

[16]     Rec. Doc. 8-1 at 343-346.

Cyclobenzaprine for muscle spasms. She was also taking Naproxen for pain or inflammation.

On October 27, 2013,[17] the claimant was seen in the emergency room at University Medical Center ("UMC") in Lafayette, Louisiana. She complained of shortness of breath, diffuse body aches, and dry cough. She had taken allergy medications without any improvement in her symptoms. She also reported having been seen at a different clinic in July 2013 for shortness of breath and given an albuterol inhaler and Allegra, which improved her symptoms. She also reported a significant unintentional weight loss, chills but no fever, fatigue, weakness, and poor appetite. She had abdominal swelling and a large, firm umbilical hernia or mass. She was diagnosed with a right pleural effusion (accumulation of fluid around the lung), hypokalemia (low potassium level), umbilical hernia, and ascites (accumulation of fluid in the peritoneal cavity). The treatment note indicates that she had no anxiety or depression.[18]

A surgeon was consulted, and the claimant was admitted to the hospital. Thoracentesis or drainage of the fluid from the pleural space was performed the same

---

[17]     Rec. Doc. 8-1 at 236-243, 251-252.

[18]     Rec. Doc. 8-1 at 240.

day, and 750 ccs of brown-colored fluid was removed.[19]  Imaging of the abdomen was obtained the next day.[20]  On October 30, 2013, an ultrasound-guided diagnostic and therapeutic paracentesis (or removal of fluid from the abdomen) was performed because an ovarian malignancy was suspected.[21]  A colonoscopy was also performed on October 30, 2013, which showed the colon was grossly swollen and edematous, collapsed, and hyperactive, but no polyps or lesions were found.[22]  A gynecologist was consulted because a uterine malignancy was suspected.  A pap smear and endometrial biopsy were performed.  An exploratory laparotomy was recommended, but the claimant refused the procedure.  The claimant was discharged from the hospital on November 1, 2013.  The discharge diagnoses were iron deficiency anemia, right pleural effusion, ascites, and umbilical hernia.  It was noted that the right pleural effusion was suspicious for malignancy.  The claimant was instructed to follow up with a gynecologist and an internist.

The record contains no evidence that the claimant was seen by a gynecologist or internist thereafter.

---

[19]    Rec. Doc. 8-1 at 254-255.

[20]    Rec. Doc. 8-1 at 225-235, 258.

[21]    Rec. Doc. 8-1 at 253.

[22]    Rec. Doc. 8-1 at 244-250.

On November 10, 2013, an ultrasound examination of the claimant's abdomen was conducted, which showed a large right pleural effusion.[23]  On that same date, the claimant was seen in the emergency room at Lafayette General Medical Center in Lafayette, Louisiana.[24]  She complained of right side chest pain with shortness of breath since the day before.  She described a sharp, constant pressure in the right axillary chest and rated her pain at eight out of ten.  Lying down made the pain worse, and she had difficulty taking a deep breath.  Examination showed decreased breath sounds on the right.  Her abdomen was not distended, and there was no evidence of ascites.  The claimant also reported having been hospitalized with similar symptoms two weeks earlier.  The treatment note indicates that she had a flattened affect, psychomotor retardation, and depression without hallucinations or delusions.  The emergency room doctor consulted with a pulmonologist, and the claimant was admitted to the hospital for thoracentesis, during which 1,500 cc's of tea-colored fluid was removed.  The fluid from the thoracentesis showed no malignant or atypical cells, but acute and chronic inflammatory cells and fibrin clot were present.[25]

---

[23]    Rec. Doc. 8-1 at 333-334.

[24]    Rec. Doc. 8-1 at 260-275.

[25]    Rec. Doc. 8-1 at 324.

The next day, a transthoracic echocardiogram was performed[26] to rule out cardiomyopathy. It showed evidence of pleural effusion but no pericardial effusion and adequate ventricular function. A transvaginal ultrasound obtained on November 12, 2013 showed an obscured right ovary, cysts in the left ovary, and free fluid in the left adnexa (structures related to the ovary). On November 13, 2013, a CT scan of the abdomen and pelvis was performed due to pleural effusion of unknown origin and to evaluate for gynecologic abnormality.[27] It showed a septated left ovarian cyst, for which a gynecological evaluation was recommended due to the size and complexity of the cyst; trace abdominal and pelvic ascites; a large right pleural effusion resulting in a shift of the mediastinum (the partition between the lungs); and a periumbilical hernia. On November 15, 2013,[28] an arterial and venous ultrasound was performed, which showed patent hepatic and portal veins, right pleural effusion, a normal pancreas, a normal aorta, and gallstones. A CT scan of the thorax performed on November 15, 2013[29] showed a prominent right pleural effusion and right-sided

---

[26]    Rec. Doc. 8-1 at 318-321.

[27]    Rec. Doc. 8-1 at 327-329.

[28]    Rec. Doc. 8-1 at 335.

[29]    Rec. Doc. 8-1 at 330-332.

atelectasis (partial lung collapse) with no evidence of pneumothorax (lung collapse with air escaping into the chest).

Dr. Victor E. Tedesco IV, a cardiovascular and thoracic surgeon, consulted on November 18, 2013.[30] His plan was for the claimant to undergo a right-sided video-assisted thorascopic surgical procedure ("VATS") the next day.

The claimant was discharged from the hospital on November 24, 2013.[31] The discharge diagnoses were: (1) recurrent right-sided pleural effusion of unknown etiology, status-post thoracotomy (incision of the chest wall) and decortication (removal of a fibrous layer to permit the lung to expand) on November 20, 2013 without complication; (2) anemia secondary to acute blood loss as well as chronic inflammation; and (3) ovarian cyst. The discharge summary explained that the planned VATS procedure was converted to open thoracotomy with decortication, during which two chest tubes were placed. The tubes were removed on November 23, 2013. The claimant's chest x-ray on November 24 showed minimal right pleural effusion. An autoimmune work-up was pending. The claimant was released home with Percocet for pain, instructions to maintain a bowel regimen while on narcotics,

---

[30]     Rec. Doc. 8-1 at 315-317.

[31]     Rec. Doc. 8-1 at 322-323.

and instructions to continue deep breathing and incentive spirometry at home. She was to follow up in two to four weeks.

The record contains no evidence that the claimant followed up with her physicians as instructed following surgery. The next treatment note in the record is dated July 17, 2014, more than six months after the hospitalization and surgery, when the claimant returned to SWLA Center for Health Services in Lake Charles and saw nurse practitioner Brittney Patterson-Davis.[32] The claimant gave a history of having been followed by cardiologist Dr. Allam after her lung collapse in November 2013 and having been discharged back to work in January 2014. Other than the hospital records, there is no other evidence in the record concerning treatment by Dr. Allam. The claimant complained to Nurse Patterson-Davis of shortness of breath, right chest pain, and tenderness with movement. She indicated that moving her right arm caused pain. She told the nurse that her pain has been the same since surgery. She requested a chest x-ray and medication for her chest pain and menstrual cramp pain. According to the record, the claimant over-exaggerated her response to the nurse's light touch on her healed incisional scars. Her lungs were clear to auscultation. The treatment note indicated that the claimant denied anxiety, depression, or any mental health problems. The claimant asked to have disability forms filled out, indicated that Dr.

---

[32]     Rec. Doc. 8-1 at 348-351.

Allam had refused to fill them out, and the nurse practitioner also declined to do so. Nurse Patterson-Davis prescribed Ibuprofen 800 mg for pain and advised the claimant to follow up with her treating physician.

On July 22, 2014, the claimant called the SWLA Center seeking refills of the Ibuprofen 800 and was told she could buy it over the counter.[33]

On January 7, 2016, the claimant testified at a hearing regarding her symptoms and her medical treatment. At that time, the claimant was working nine hours per week for a cleaning service.[34] She stated that she could not lift anything very heavy and has to pace herself while working.[35] The claimant testified that she continued to have pain where the chest tubes were inserted.[36] She stated that she prepares her own meals but works at a slow pace; she shops for groceries but only buys small amounts.[37] She stated that she gets short winded when walking or climbing stairs, that her back and arm hurt when she fails to take frequent breaks, that she could stand

---

[33]    Rec. Doc. 8-1 at 353.

[34]    Rec. Doc. 8-1 at 34.

[35]    Rec. Doc. 8-1 at 37.

[36]    Rec. Doc. 8-1 at 39.

[37]    Rec. Doc. 8-1 at 39.

for forty-five minutes to an hour, cannot sit in the same position for very long, and can lift only about five pounds.[38] She testified that she takes Aleve for pain.[39]

In her briefing,[40] the claimant reiterated that she experiences shortness of breath, excessive fatigue, and overheating that requires her to take frequent breaks at work even while she is trying to pace herself. She also stated that she experiences extreme pain in her chest on the right side, right shoulder, and under her armpit down to her waist. She stated that walking, lifting, standing, and sitting too long all cause pain. She stated that she cannot lay flat on her back due to pain. She reported having difficulty caring for her hair because lifting her arms over head is painful. She also stated that her pain and breathing have gotten worse since her surgery but she is unable to afford doctor visits and medication.[41]

## ANALYSIS

### A.  STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the

---

[38]     Rec. Doc. 8-1 at 40-41, 43.

[39]     Rec. Doc. 8-1 at 43.

[40]     Rec. Doc. 9 at 3-4.

[41]     Rec. Doc. 11 at 7-8.

proper legal standards were used in evaluating the evidence.[42] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[43] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[44]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[45] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[46] Conflicts in the evidence[47] and credibility assessments[48] are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial

---

[42]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[43]     *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[44]     *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[45]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[46]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

[47]     *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[48]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[49]

## B.    ENTITLEMENT TO BENEFITS

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[50]  A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[51]  A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant

---

[49]    *Wren v. Sullivan*, 925 F.2d at 126.

[50]    See 42 U.S.C. § 423(a).

[51]    42 U.S.C. § 1382c(a)(3)(A).

-13-

lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[52]

## C.  EVALUATION PROCESS AND BURDEN OF PROOF

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[53]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[54] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[55] The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[56]

_____

[52]     42 U.S.C. § 1382c(a)(3)(B).

[53]     20 C.F.R. § 404.1520.

[54]     20 C.F.R. § 404.1520(a)(4).

[55]     20 C.F.R. § 404.1545(a)(1).

[56]     20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[57]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[58]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[59]  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[60]

## D.  THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since the alleged disability onset date of November 1, 2013.[61]  This finding is supported by substantial evidence in the record.

---

[57]     *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[58]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[59]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[60]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[61]     Rec. Doc. 8-1 at 18.

At step two, the ALJ found that the claimant has the following severe impairment: a history of lung collapse (which required tube placement).[62] This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[63] The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform sedentary work "except no concentrated exposure to extremes of heat and/or cold; frequent reaching with the right dominant extremity; occasional climbing of ramps and stairs; and no climbing of ladders, ropes, or scaffolds."[64] The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing her past relevant work as a caretaker, a housekeeper, and a food service company worker.[65] The claimant does not challenge this finding.

---

[62]     Rec. Doc. 8-1 at 18.

[63]     Rec. Doc. 8-1 at 18.

[64]     Rec. Doc. 8-1 at 19.

[65]     Rec. Doc. 8-1 at 22.

At step five, the ALJ found that the claimant was not disabled from November 1, 2013 through January 27, 2016 (the date of the decision) because there are a significant number of jobs in the national economy that she can perform.[66] The claimant challenges this finding.

**E.    THE ALLEGATIONS OF ERROR**

In her briefing, the claimant argued that she is no longer able to work on a full-time basis due to shortness of breath, pain, and fatigue. This Court interprets this argument as a contention that the ALJ erred in evaluating the claimant's residual functional capacity.

**F.    THE ALJ DID NOT ERR IN EVALUATING THE CLAIMANT'S RESIDUAL FUNCTIONAL CAPACITY**

The ALJ is responsible for determining a claimant's residual functional capacity.[67] In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.[68]

---

[66]    Rec. Doc. 8-1 at 22-23.

[67]    *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[68]    *Martinez v. Chater*, 64 F.3d at 176.

The claimant in this case has continued to work since her hospitalizations and surgery. However, she has gone from being a full-time supervisor for a food service company to being a part-time cleaner, working only nine hours per week and not earning at a substantial gainful activity level. There is no evidence in the record establishing that this change in employment was recommended by a physician who was treating the claimant, evaluated her functional ability, and opined that she is limited in any way. In fact, no functional analysis by any treating physician is included in the record, and no medical opinions concerning any limitation of the claimant's functionality are set forth in the record. The only evidence concerning the claimant's functional capabilities is her own testimony based on her subjective complaints. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.[69]

The ALJ found that the claimant has the residual functional capacity to perform sedentary work with certain restrictions. The ALJ expressly indicated that this

---

[69] *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

residual functional capacity finding accounts for the shortness of breath that the claimant contends she has continued to experience since her illness in 2013.[70]

It is undisputed that the claimant had a right-side pleural effusion in November 2013 for which she was ultimately treated with surgical intervention.  The record contains no medical evidence establishing that this condition was not fully remedied by the surgery.  Still, the claimant contends that shortness of breath continues to limit her functionality.  The ALJ compared the claimant's shortness of breath complaint against the criteria of the listing for chronic pulmonary insufficiency (Listing 3.02), and found that the criteria are not satisfied.  The claimant did not argue that the ALJ erred in his analysis of that listing nor did she identify any other listing that she meets or equals.  Although the record contains no objective medical evidence indicating that the claimant continues to have an ongoing condition that causes or result in shortness of breath, the ALJ crafted a residual functional capacity finding expressly accounting for the claimant's subjective complaints of shortness of breath.

The claimant also contends that pain limits her functionality.  Pain can constitute a disabling impairment,[71] but pain is disabling only when it is constant,

---

[70]     Rec. Doc. 8-1 at 21.

[71]     *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

unremitting, and wholly unresponsive to therapeutic treatment.[72]  Mild or moderate

pain is not disabling.  Furthermore, subjective complaints, such as complaints of pain,

must be corroborated by objective medical evidence.[73]  While an ALJ must take into

account a claimant's subjective allegations of pain in determining residual functional

capacity, the claimant must produce objective medical evidence of a condition that

reasonably could be expected to produce the level of pain alleged.[74]  The mere

existence of pain does not automatically create grounds for disability, and subjective

evidence of pain does not take precedence over conflicting medical evidence.[75]  The

absence of objective factors can justify the conclusion that a witness lacks

credibility,[76] and the ALJ's decision on the severity of pain is entitled to considerable

judicial deference.[77]

---

[72]    *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir.
1990).

[73]    *Chambliss v. Massanari*, 269 F.3d at 522.

[74]    *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[75]    *Harper v. Sullivan*, 887 F.2d at 96.

[76]    *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008) (citing *Hollis v. Bowen*,
837 F.2d at 1385).

[77]    *Chambliss v. Massanari*, 269 F.3d at 522; *James v. Bowen*, 793 F.2d 702, 706 (5th
Cir. 1986); *Wren v. Sullivan*, 925 F.2d at 128.

It is undisputed that the claimant had a serious lung condition that resulted in surgery. Both the illness and the surgery were sources of pain. Although the claimant indicated in her briefing that the lung condition for which she underwent treatment could recur, there is no objective medical evidence in the record establishing that the acute lung condition for which she was previously treated has recurred or that either the condition or the treatment that she received for the condition resulted in ongoing intractable pain. She was released from the hospital with a narcotic painkiller but was subsequently prescribed only an over-the-counter pain relief medication. There is no evidence in the record showing that, after being released from the hospital, the claimant followed up with any of the physicians who treated her while she was hospitalized – except for her report that Dr. Allam released her to return to work in January 2014. Similarly, there is no evidence in the record that the claimant has visited her primary care physician regularly since her surgery. Thus, there is no medical explanation in the record for why the claimant would be continuing to experience significant pain long after she recovered from her surgery. A lack of objective medical evidence or treatment may support an ALJ's adverse credibility ruling,[78] and an ALJ may rely on the lack of prescribed treatment as an

---

[78]     See *Hollis v. Bowen*, 837 F.2d at 1384 (recognizing "that an absence of objective factors indicating the existence of severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition – can itself justify the ALJ's conclusion.")

indication of nondisability.[79]  While the ALJ did not set forth a particularized finding with regard to the claimant's pain complaints, he summarized those complaints in his ruling and referenced them in his evaluation of the claimant's residual functional capacity.  Therefore, his finding that the claimant can perform a limited range of sedentary work incorporates his analysis of the credibility of her pain complaints.

In her application for benefits, the claimant alleged that she is disabled due to depression and anxiety.  Although the records from Lafayette General indicate that the claimant exhibited some symptoms of depression, the record contains no evidence that the claimant was ever treated for depression or anxiety.  Therefore, there is no evidence that her functionality is adversely affected by either anxiety or depression.

This Court's comparison of the evidence in the record with the analysis and findings set forth in the ALJ's decision supports the conclusion that the ALJ's credibility determination with regard to the claimant's subjective complaints is supported by substantial evidence in the record.  Such a credibility determination is within the province of the ALJ,[80] and an ALJ's assessment of a claimant's credibility is accorded great deference.[81]  This Court concludes that the claimant has not shown

---

[79]   *Villa v. Sullivan*, 895 F.2d at 1024.

[80]   *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).

[81]   *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

that the ALJ erred in his credibility analysis, particularly because his decision shows that he properly considered the record as a whole.

This Court's review of the record and the ALJ's ruling indicates that the ALJ properly evaluated the claimant's subjective complaints and properly reached a residual functional capacity finding that is supported by substantial evidence in the record. Therefore, the claimant failed to prove that she is disabled.

## CONCLUSION AND RECOMMENDATION

**IT IS THE RECOMMENDATION** of this Court that the decision of the Commissioner be **AFFIRMED** and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[82]

Signed in Lafayette, Louisiana, this 19th day of May 2017.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[82] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).